Ms. Hong is pro bono? Yes, Your Honor. I've seen you before. Yes, Your Honor, I've seen you. Indeed. It's always a pleasure. Thank you. Well, good morning. May it please the court, my name is Kari Hong. My co-counsel is Laura St. John. We are from the Florence Project. We represent Mr. Jose Alcocer-Vargas. I will reserve two minutes of my time for rebuttal. I will watch the time. Very well. This case appears like a complicated chemistry issue. But in reality, it involves a simple legal question that this court can and is compelled to easily answer. We have had an evidentiary hearing. Everything that the court needs to resolve this issue is in the record. So you just view this as a failure of proof by the government, right? I'm sorry, what's that? You just view this as a failure of proof by the government. I see it as a legal issue. A number of legal issues that both other circuits and even the BIA itself and Felix Figuerera have resolved in Mr. Alcocer's favor. Starting with the federal analogs, the De Campo footnote was incorrect to suggest that the Federal Analog Act captures every drug that is not listed on the Controlled Substance Act, known as the CSA. A federal analog is a term of art. It has two elements. The analog has to have a similar chemical structure and it has to have a similar pharmacological effect as the CSA drug. But in this case, counsel, you may be an expert in these isomers. I was learning a lot reading about this and I still don't know as much as I need to know, but it seems to me that no court in this proceeding has actually analyzed the impact on the body of the isomers involved. Basically, we have no record. Your client brought it up before the IJ. It was never contested by the government. The government didn't talk about it for the BIA. So we don't have a record. So what you're asking us to do, just based on chemical descriptions, that that's it. There's no analysis of how this works or the paraphernalia related to methamphetamine. Is that your position? My position is the one shared by the Seventh Circuit precisely on methamphetamine and six other circuits. It's not about chemistry, it's about statutes. But the statute in Indiana was different than this one. It also regulated optical and positional isomers. Arizona regulates optical and positional isomers. And what's significant, the Felix Figueroa case from 2015, it's cited in the supplemental brief. It's a published case from the BIA. Footnote 1 says that the DHS and their, the Pro Se Party, agreed that positional isomers exist. Footnote 2 is significant, because footnote 2 cites to the Second, the Seventh, and the Eighth and says under those circuits, our case would be done because the statutory overbreath is enough. So your argument is the fact that positional isomers exist is a legal matter that we could resolve? Well, once positional isomers exist, then Lopez Aguilar in the Ninth Circuit says statutory overbreath is enough. Okay. Well, answer the first question, though. Yes. Well, it has been resolved by the DHS and the BIA at this point, and the Seventh Circuit, that positional isomers exist. And on this record — As a legal matter, we have to accept that legal isomers exist. Yes. And we had an expert declaration in this record, which is found at 276. The Seventh Circuit had a footnote just — What do we do with the Chenery line of cases that says that, you know, us courts cannot substitute the judgment of agencies? Since the BIA never found this question, how are we supposed to do that? Well, under the BIA decision, they recognize that only CSA substances at number three are those that can trigger deportability. Now, what the BIA did is that it analyzed geometric isomers, which is an argument that Mr. Alcocer never advanced. So the BIA never found positional isomers, correct? Well, not in that case, but in the published case from 2015, footnote one, the BIA says, yes, positional isomers exist. We have the record that exists. The DHS does not dispute it, either in the BIA. It never disputed it. At the immigration court level, it never disputed it. And in this court, it does not dispute it. Is that binding, that old BIA position? Is that binding on the panel that's in this case? Well, yes, it is. And also, we have the Seventh Circuit recognizing — That's not binding at all. Well, Lopez-Agliar said that if you just look at the statutory text alone, as long as it's not a logical impossibility, that will be enough. And Lopez-Agliar addressed whether a robbery by consensual taking would be overbroad to the generic offense. So that's only the first question. The second question, as a factual matter that I see it, is whether or not positional isomers have a potential for abuse. And I don't — how are we supposed to find that as a matter of law, that that's true? That's a factual question that no one has ever asked. The BIA has never addressed it in any decision, in this case or any other. So how are we supposed to do that? Because all you have to do is affirm what the Ninth Circuit says, that if there's statutory overbreath, that alone is enough to meet — that is enough to show overbreaths. And then under the deportability context, it's also indivisible. You know very well, given your experience, we deal with categorical analysis and modified categorical analysis in so many ways, in so many settings. But this one's different. This one's different. Because we're here — we're talking about chemical compounds, very significant scientific issues, and nobody really analyzed what the impact was on the body. And of course, part of what the statutes deal with here is the impact on the body. I share what I believe my colleague's concern is, this is a serious issue. But we're not scientists. Certainly I'm not. Maybe my colleague from Texas is, because he has an engineering degree. But I'm not a scientist. I don't purport to be able to analyze the technical aspect of it. And I don't think I'm supposed to be doing that. I think it's supposed to be done by experts in a hearing so they can determine whether, in fact, there is a categorical match. If not, whether it's a modified because it's divisible. I don't see how we can do that. How can we? Well, the immigration courts surely cannot. They can do fact-finding. Well, Dana Marks noted that an immigration court is traffic court for the death penalty. These are three — What did you call it? What's that? What did you call it? A traffic — Traffic court for the death penalty. These are three-hour hearings. The federal rules do not apply. They do not have to apply at all, which is why the Seventh Circuit, the Eighth Circuit, the Second Circuit, the Eleventh Circuit, and the Third Circuit have all said we look at the text. If the statutes for drug — for drug — for drug offenses, if they're overbroad to the federal definition of what's in the CISA, our work is done. But you can — it's your contention that one can do that, as my colleague referred, as a matter of law. You can simply look at the isomers involved, and you can say, oh, that's overbroad. That is what Maloui does. That is what Moncrief does. That is what, in the citation of the opening reply and supplemental brief of what the Sixth Circuits do, they simply say we look at the statute. We do not need to look at anything else. And that is the problem. Can I interrupt you and make sure — do you accept that this Court's jurisdiction is limited to questions of law as opposed to questions of fact? Yes, there's — the Court also has jurisdiction of application of law to fact. Okay. And so let me walk through my reading of what the BIA did, and tell me where you think it made a mistake of law. First, it looked at the statute of conviction, Arizona Revised Statute 133415a, and found it was overbroad because it included several substances that are not federal. You agree that was correct? Which — of which statute? Arizona Revised Statute 133415a, the statute of conviction. You agree that BIA correctly found that overbroad? So that — that conviction is actually drug paraphernalia, because he was caught with a baggie, and there was some residue on it. Right. But the definition of dangerous drug — Is at a different — Is broader. It's not 13 — it's not 3415a. It's a different statute. Okay. Fair enough. But we're — we're concerned here with the definition of the term dangerous drug. Correct. Right. That's what makes it overbroad. Correct. Okay. And so then the BIA looked at the Shepherd documents and found that they narrowed the basis of your client's conviction to methamphetamine. And was that an error of law? Yes. Because what they did, they said the — they started before by saying we look at the And they said because geometric isomers do not exist, citing to the Ninth Circuit case, they said then this is — this is not overbroad.  But the statute defining the types of drugs that can underlie a paraphernalia conviction included narcotic drugs, dangerous drugs, marijuana, or peyote. Correct. And that's what made it overbroad. And because dangerous drugs includes methamphetamine. And the BIA's error is that they said, well, geometric isomers don't exist. They ignored that positional isomers don't exist. Well, I guess what I'm asking is why does — what did the BIA do wrong in looking at the Shepherd documents and saying — it didn't say this, but it said the Shepherd documents narrow the basis of your client's conviction to methamphetamine. And true, it didn't address positional isomers, but is that an error of law given that positional isomers were never mentioned in the Shepherd documents? Yes. Because he raised it to the — he had an expert opinion. He raised it to the IJ. He raised it to the BIA.  But you could — you could have an expert opinion that tons of drugs exist, but the Shepherd documents narrowed your client's basis of conviction to methamphetamine. Yes, but you — And was that an error of law? Yes, because you start out at the categorical step one. And at step one, if there's statutory overbreath, you then go to step two to ask whether it's indivisible. The BIA skipped over that step. And Romero — well, this Court's already resolved that. Romero Milan held that the statute's divisible by drug type. Well — So that can't have been an error of law. No, it is. Because then within the drug type, that's where they ignored State of Pequena, which was cited to both the IJ and the BIA. And State of Pequena in Arizona, there the defendant said, hey, you didn't prove whether it was an L isomer or an N — or a D isomer. And there the state court said, we don't care because all isomers in Arizona are criminal. It does not matter which isomers are involved in your offense. Sure. That is the error — But are all — are all positional isomers of methamphetamine? Were those charged against your client? Or was he charged with methamphetamine? He's charged with methamphetamine. And State — But that's — as a statutory matter, that's different than an isomer of methamphetamine, right? It's the same thing as Lopez Aguilar, where he was — Let me ask you this. The definition of dangerous drug is what includes positional isomers, right? Includes methamphetamine, and methamphetamine includes positional and identical isomers. No, it doesn't. 13-3406-C1 is the clause that covers as a dangerous drug the following listed items and their positional isomers. Which includes methamphetamine. Right. So the positional isomers are included as dangerous drugs, right? Correct. They're not included as methamphetamine, are they? No, but they are — but it is recognized — I just want to make sure I had your concession on that. And your client was convicted of methamphetamine, right? Yes, but — Not just charged with paraphernalia of a dangerous drug, but paraphernalia relating to methamphetamine, right? Well, yes. And under methamphetamine, then it can be indivisible. And that's where State pequena comes in. And that — when you asked what the error was, the BIA never looked at the divisibility of methamphetamine. And State v. Pequena — How is it statutorily divisible? What part of the statute makes methamphetamine divisible, as opposed to dangerous drug divisible? It's indivisible. Because methamphetamine can be defined by positional and optical. The federal definition has optical definition. And what's clear about the federal definition is that under both — under methamphetamine, both under the sentencing guidelines, there is a different sentence and a different conviction about whether the person possesses methamphetamine as a matter of Arizona law. But is there any Arizona statute saying that a positional isomer — a case — a positional isomer of methamphetamine is methamphetamine, as opposed to is a dangerous drug? Yes, because — Which case is that? Which Arizona case is that? State v. Pequena. That only dealt with optical isomers. It said — no, it said that the State does not have to prove which isomers are involved, because all of them — But the optical isomer is charged in that case. No, Your Honor, because, as the Court explained, all isomers in Arizona are not only regulated, but they have the same sentencing consequence. In federal court, by contrast, DMETH has much higher sentencing than LMETH, which is — That's true. Why? Then, in federal courts, the prosecution has to have evidence about whether it's the D isomer or the L isomer, because, as Mathis says, the punishing consequences can prove whether it's an element. We know that the isomers have different elements in federal court. I'll let you save your time. You want to save the balance of your time? Yes, Your Honor. Thank you so much. Very well. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the Respondent. The question before the Court is whether Petitioner's methamphetamine offense in Arizona qualifies as a controlled substance offense for immigration purposes. Now, the parties both agree that the agency overlooked Petitioner's argument that Arizona's methamphetamine definition is overbroad because it includes positional isomers, and, accordingly, that the agency — Well, you agree that, and I agree, that the BIA didn't address positional isomers, but why are you saying that that was an error of law? We're not saying, Your Honor, that that's an error of law. We're saying that that issue was developed by Petitioner below and that the agency without question did not examine that evidence. You previously, as the government, moved to remand. That's right. And then in your supplemental brief, you argued that the Court could affirm. Are you withdrawing your motion to remand? We're not — we're not withdrawing your argument. And, in fact, our central primary argument, even in our supplemental brief, was consistent with our position in our answering brief, which is that we do believe that remand is appropriate here because this can't be resolved without a trial. Is it an error of law for an agency to fail to address an argument that is not necessary to reach the results it reached? No, if it's not necessary. And I think even if — And is that what happened here? We do believe that it is necessary to understand what positional isomers are in order to conduct a proper categorical approach.   Was Alcazar Vargas charged with paraphernalia relating to a positional isomer of methamphetamine, or was he charged with paraphernalia relating to methamphetamine? Your Honor, he was charged with paraphernalia relating to methamphetamine. Right. He wasn't charged with dangerous drug, was he? Specifically says methamphetamine. No, Your Honor. It was just methamphetamine. So then why did the BIA have to address any other drug that may have been a dangerous drug at all, whether it's an isomer of meth or fentermine, which is a listed drug, which happens to be a positional isomer of meth? Yes. So I see that you've addressed some of these other Arizona methamphetamine cases, and that's where the fentermine argument comes from. Our understanding of Petitioner's argument is that because the dangerous drug schedule defines meth as part of its general cross-reference in its isomer definition, to include optical, positional, and geometric isomers, that that's why those are part of it. But it's not what the statute says. It says dangerous drug includes the position. Oh, we agree. We certainly agree with that. It doesn't say that meth includes those isomers, does it? It doesn't. And he was charged with meth, right? Pardon me? Mr. Alquist-Cervargus was charged with meth, not — He was charged with meth, yes. Let me put it this way. If the Court were to deny the petition for review on the basis that I've outlined, would the government defend that? Or if some further review was sought, would you confess error? I suppose it depends on exactly what the Court said. What would that holding look like? It said that the BIA committed no error of law by looking at the Shepard documents to narrow this conviction to methamphetamine, which doesn't have any broader meaning than the federal definition. We do agree that that is what methamphetamine means, but we don't think that here you can reach that determination without fleshing out what positional isomers and methamphetamine mean. And that's because — and I'm trying to answer your question, Your Honor. I recognize that methamphetamine is listed by itself and that the isomer definition is more broadly applied to dangerous drugs. But those isomer definitions do then apply to each substance, but you need to figure out which of those substances, in fact, have the different types of isomers. For instance, that definition includes geometric isomers, which we know do not exist for methamphetamine. It includes optical isomers, which we know do exist for methamphetamine. So part of what we're asking for on remand — Okay, but not every positional isomer of methamphetamine is methamphetamine, right? Like one positional isomer of methamphetamine is — it has a different name that's listed in the Arizona statute. It's called phentermine. Yes, and it's separately controlled — And Mr. Officer Vargas wasn't charged with that. He was not. So we don't need to analyze whether phentermine is a CSA substance. Well, Your Honor, this is — Can I just ask a question? No, no, it's okay. I just want to — I just want to understand your excellent questions are probing what I'm interested in with the government. I find the government's position to be a little inconsistent here. We've got, if I understand it, three different cases that have been remanded eventually from our court to do what you're asking us to do again. That's right. Which is to have the BIA, or am I supposed to actually, the IJ, the traffic court, as you refer to it, do the scientific analysis to determine whether you have a categorical match or not, whether it's divisible or not. My colleague, of course, has pointed out that we don't even need to get there in order to have a resolution in this case. And yet the government, in at least three other cases, has said, send it back. You're asking us to do it again. That seems rather inconsistent to me. My colleague, you may be absolutely right on point. You don't even need to get there. But what should we do with this now, given the fact you've got three other cases sent back to resolve the very same question you're asking us in your original pleading to do? Well, Your Honor, respectfully, I'm not sure what the inconsistency is. We are asking this court to do exactly what it has done in those three other cases, in which the agency, like here, was not able to address arguments regarding the overbreadth of positions. Well, they were. From my perspective, if this were a civil case, this would be a failure of proof. You simply didn't prove up the elements. But because the petitioner in this case did raise the issue before the IJ about the isomers. But somehow this has gotten bollocked up in some way. BIA didn't consider it, and yet we're going to send it back. I guess that's the best solution from the government's perspective. I gather my colleague has pointed out a way that you could, in quotes, win, in quotes, without our doing that. Are you now advocating that we do what he has suggested? I'm not, Your Honor. That's never been our position that you can separate out methamphetamine from the isomers in the way that I believe Judge Barker is suggesting here. We don't believe. It's your case. Your Honor, we're talking about the categorical approach, and I recognize that it asks us and the courts oftentimes to find ways out, but we're still interested in making sure the law is consistent and right. And so we want to make — Can I do a pivot and ask you about —  Have you read the Seventh Circuit's opinion in Familia Rosario v. Holder? What is the Petitioner's name there? Familia Rosario v. Holder from the Seventh Circuit. I'm not sure, but if you start describing — Judge Williams wrote an opinion there saying that even if a State statute maybe includes some drugs that are not CSA, if the State statute defines what it prohibits with reference to the CSA drug, that makes the State conviction one relating to a CSA drug. So as applied here, even if positional isomers are potentially what Mr. Aklas or Vargas was convicted of, despite never being mentioned in his Shepard documents, which you seem to just overlook, but even if that were the case, his conviction would still relate to the CSA drug or methamphetamine. Are you disclaiming that argument here as well? No, Your Honor. I mean, that is a version of what we did flag in our brief as the relating-to argument. This was the last part of your brief? Yes, in the answering brief. Yes, we think that the relating-to argument at a minimum must suggest that if you were comparing a substance in a State schedule to the same substance on a Federal schedule, then regardless of how those substances are defined by their isomers, then that must relate to that substance. And to be very clear about this argument, Malooly, which Petitioner raises here as suggesting that that does not apply or has having foreclosed this argument, Malooly, without question, does not address that argument. Malooly was a very specific and different argument that the government had raised that just a general overlap in substance schedules can be enough, but that there does not need to be a specific link to the Federal substance. But if that argument would show that there was no error of law, are you still supporting Riemann for reasons of the Chenery Doctrine? Are you saying the BIA needs to decide that first? Yes, Your Honor. And I think the way that we framed it in our position here is that fact-finding would be the first way to resolve this because we might not even need to get to the relating-to argument if positional isomers don't exist, which is still on the table. If the relating-to argument's right as a matter of law, you don't need to get to the fact-finding. That's true. That's true. It's a which comes first, Your Honor. I think we would. And Chenery applies to issues of law like that? If we said the BIA did not make a mistake of law, but for a different reason, you would view that as requiring a Riemann under Chenery? Well, again, it depends on what the specific question for the BIA to reconsider would be. I think separate... Your relating-to argument. Right. And I think separate even from the factual-finding piece of this, we also asked for Riemann on that. So our position was upon Riemann, after whatever factual findings are conducted, if the relating-to argument becomes relevant, that we would like the BIA to be the one to address that first, of course, recognizing that this is a statute, an immigration statute that the BIA administers. And so this Court has recognized... What do you do with the fact that we, as a court of appeals, don't have jurisdiction to, if you will, rule on matters that the BIA did not consider? How does that impact our analysis in this case? I mean, that's part of why we believe Riemann is appropriate here. There's, of course, an exception for that for pure legal issues where you don't have a matter that is within the board's expertise. So the relating-to argument, for instance, the board did not rely on that here. And we would say that, though it's a pure legal argument, it is one that falls under the board's interpretation of a statute... Do you think we would have jurisdiction to decide this case based on the related-to language? Jurisdiction? Yes, Your Honor. I think we think the board... Do you think the BIA considered that enough for us to have jurisdiction? No, sorry. My point is that you would have jurisdiction because it's a pure legal issue. But my point is that it would be one that the board... Even if the BIA didn't consider it? Even if the board did not. It's a pure legal issue. But our point is that the board, we would believe the board should get an initial shot at interpreting it because it is a statute that it administers. But we do believe that the court has jurisdiction to interpret statutes. Even under Chevron, that could have been, and other courts have resolved the related-to... The former Chevron? The former Chevron. Departed. Even under a Chevron framework, prior courts have looked at the relating-to meaning specifically and resolved it without getting to step two. Just said, we know how to interpret the words relating-to. We're saying that the board should do that. You need to go for a sale on the low for bright. Pardon me? You need to go for a sale on the low for bright. Counsel, I thought under Chenery that we're only allowed to rule on that issue if the BIA has no discretion to rule on it. So that it's a harmless error if there's no choice but to go one route. By the BIA. That's my understanding of Chenery. Your Honor, my understanding is that if the board had discretion, it was never, I don't believe it was even presented here. So for that reason alone, I think, and again, it's just like the factual findings here. We are talking about issues that both the immigration judge and board never even had opportunity to address. I guess what I'm saying is it is a little bit complicated after Loper because we're not talking about a Chevron deference scheme. But this Court has continued to recognize, of course, as Loper Bright itself did, that the agency has experienced an extradition offer. I'm not talking about the merits of the question. I just think, I just thought, you said that we could, if the BIA doesn't reach a legal question, we can. I don't know if that's true under Chenery.   It does depend on the question. And we view this as a matter of pure statutory interpretation. That, of course, does not, this one involves facts. But the relating to argument does not. Right. Can I ask one other question? So is the government's position that positional isomers do exist or do not exist? Your Honor, we are not in a position to answer that based on the record before this Court. And I want to address this directly. And then what's the BIA, the prior decision of the BIA? Is that not binding, apparently? It's not, Your Honor. Respectfully, I think it's the Felix Figueroa decision, which was actually, I think, earlier this year. There, the BIA actually did not seem to follow what this, and that was, I think, arose in the Ninth Circuit as well. It did not follow the approach this Court has counseled in cases like Rodriguez-Gamboa, which is, they said, if there are overbroad isomers, then you need to, you apply the realistic probability test regardless. If that had been the approach in Rodriguez-Gamboa, it would never have come out the way that it did. It would have just said, even geometric isomers, which don't exist, end of the ball game if you can't satisfy the realistic probability test. So, no, we don't believe that the Board's position there on positional isomers or anything else governs in this case. We think that the Board needs to follow what this Court has done in Rodriguez-Gamboa, which is to say, when you reference isomers in a statute, you need to determine the significance of those isomers before you can conduct a categorical approach. So, I gather the government's position remains, you want us to remand to the BIA, and presumably to the IJA, to make scientific findings, get input from both sides, and ultimately decide whether it's categorically matched or whether it's divisible, whether there's a modified categorical analysis? That's right, Your Honor. That's the primary argument. We believe, for all the reasons we pointed out in our answering brief, that remand is appropriate. Can I just ask as a matter of process, your motion to remand was filed some number of years ago. This is still the current position of the government? It's not just you're reiterating the position from a number of years ago? It is, Your Honor, because we briefed the case earlier this year. And made many of those same arguments. And, of course, a lot has happened in the isomer world from when that motion to remand was filed in 2020 and now. But our general position remains the same, and what this Court has continued to falsify. Do you think the fact-finding before the BIA is constrained by evidentiary standards? Or do you think the BIA would essentially be doing finding as to legislative facts as opposed to adjudicative facts? I believe it would be adjudicative facts. And to be clear, it wouldn't be the BIA. It would be remanding to the immigration judge to conduct that fact-finding and accept more evidence. And we do 100% believe that that is necessary to consider positional isomers. And one of the things we haven't talked about here is it's not just a question of whether positional isomers of methamphetamine exist. It is, because of this Arizona statute, also the question of even if they do exist, whether they have a potential for abuse associated with the stimulant effect on the central nervous system. And I will note, since I want to catalog what our arguments are. So, yes, Judge Smith, primarily remand for the purposes outlined in the answering brief. I just mentioned the potential for abuse. That does, we believe, give a route to affirming under the realistic probability approach, because, and I see that my time is up. If I can just finish this answer so the Court is aware of how we want to proceed. This Court flagged the Federal Analog Act. We do believe it provides an alternate route, which would be, because of the Arizona statute, even including positional isomers, I understand, Judge Barker, you think that it does not. But even though it includes positional isomers, it cabins the meaning of that to those with the potential for abuse associated with the stimulant effect on the central nervous system. We've let you go a little bit. Let me ask my colleague whether either has additional questions. All right. Thank you for your argument.  So, Ms. Hong, you have a little bit of time. And please address the related to issue, if you will, please. Yes, Your Honor. Then I have four points. Starting with the related issue, Maloui makes clear that related to applies to drugs that are defined on the CSA. The second point, which does not include positional isomers, Felix Figueroa answers the question of what is the definition of Arizona's definition of methamphetamine. At 158, Arizona's statutory definition of a dangerous drug includes isomers of methamphetamine, whether optical, positional, or geometric. And then it cites to the Arizona statute. The second point, looking at Felix Figueroa, the BIA would have stopped right there for the Second and the Seventh and the Eighth Circuit and said that this statutory overbreath would have ended it. At footnote two, it remanded this question not for fact-finding, not for evidentiary questions, but for the realistic probability. And in footnote two, it says the only reason we're doing this is the Ninth Circuit stands alone and has not overturned Matter Ferreira when it comes to drug offenses. The six other circuits have done so. So this can be a very easy, it should be a very easy legal question that other circuits follow. You're a fan of those other circuits. I'm a huge fan of the others. I'm also a fan of the Ninth Circuit, too. There you go. Especially when it is aligned with the reasoning. Especially when it agrees with you. Exactly. Indeed. Let me ask my colleagues whether they have additional questions. Thanks to both counsel for your argument in this very interesting case. The case of Alcocer Vargas v. Bondi is submitted. Thank you, Your Honor. Thank you very much for your argument.
judges: SMITH, BUMATAY, Barker